# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHRYN AYERS, et al.,<br><br>                      Plaintiff,<br>   vs.<br><br>JAMES YIU LEE, et al.,<br><br>                      Defendant. | CASE NO. 14cv542-LAB (WVG)<br><br>**ORDER DENYING MOTION TO STAY AND MOTION TO DISMISS**<br><br>[DOCKET NUMBERS 34, 35.] |

**Motion to Stay**

Defendants have moved to stay this action because of a civil action against Lee (and others) is pending in this Court, and because criminal charges were initiated against Lee. Circumstances have changed since Defendants filed their motion, however. Since that time, civil case 14cv347, *SEC v. Lee,* et al. has been terminated. Another related civil case, 14cv1737-LAB (BGS), *SEC v. Lee*, has proceeded to judgment. And in the criminal case, *United States of America v. Lee*, 14cr2937-BEN, Lee has pled guilty. (*See* Docket no. 28 in that case.)

The Court understands Lee may wish to exercise his Fifth Amendment rights at the sentencing hearing, and in this case. But sentencing is expected to occur soon, and once that is done, he will have little reason to exercise those rights in this case. *See Kastigar v. United States*, 406 U.S. 441, 444–45 (1972) (holding that Fifth Amendment privilege can be

1  asserted in both criminal and civil proceedings, and offers protection against disclosures the witness reasonably believes could be used in a criminal prosecution against him or lead to other evidence that could be so used).

The motion to stay cites the factors outlined in *Federal Savings & Loan Ins. Corp. v. Molinaro*, 889 F.2d 889, 902–03 (9th Cir. 1989) and *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 325 (9th Cir. 1994). In light of the changed circumstances, these factors do not favor a stay. There appears to be no real danger that allowing this case to proceed would prejudice Defendants. It would, however, prejudice Plaintiffs, since it would force them to wait for relief. The public interest does not favor a stay, and the Court's convenience is unaffected either way.

**Motion to Dismiss**

Plaintiffs have sued Connie Castellanos, Lee's secretary; and Larissa Ettore, his girlfriend, under the provisions in Nev. Rev. Stat. § 90.660(4). Section 90.660(1) provides that a person who offers or sells securities in violation of certain provisions of law is liable to the person who purchases the security. Section 90.660(4) provides for the liability of several other classes of people, including "an agent of the person liable" under section 90.660(1), and "an employee of the person liable if the employee materially aids in the act, omission or transaction constituting the violation . . . ." Under § 90.660(4), "it is a defense that the person did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by which the liability is alleged to exist." Agents or employees liable under this section are liable jointly and severally with the principal wrongdoer.

Castellanos and Ettore have moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim. Although Lee nominally joined in the motion, the argument focuses on claims against Castellanos and Ettore.  A Fed. R. Civ. P. 12(b)(6) motion tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When determining whether a complaint states a claim, the Court accepts all allegations of material fact in the complaint as true and construes them in the light most favorable to the non-moving party. *Cedars-Sinai Medical Center v. National League of Postmasters of U.S.*, 497 F.3d 972,

975 (9th Cir. 2007) (citation omitted). But the Court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint," and does "not . . . necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (citations and quotation marks omitted).

Under Fed. R. Civ. P. 8(a)(2), only "a short and plain statement of the claim showing that the pleader is entitled to relief," is required, in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level. . . ." *Id.* at 555. "[S]ome threshold of plausibility must be crossed at the outset" before a case is permitted to proceed. *Id.* at 558 (citation omitted). The well-pleaded facts must do more than permit the Court to infer "the mere possibility of conduct"; they must show that the pleader is entitled to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Plaintiffs' claims arise out of an allegedly fraudulent scheme to sell securities. According to the complaint, Lee induced Plaintiffs to invest with him by misstating material facts regarding the investments he touted, falsely promising to shoulder 50% off any losses, and concealing his criminal past and a cease and desist order entered against him by the Securities and Exchange Commission for violations of securities laws. (Compl., ¶ 1.) Specifically, Lee is alleged to have recommended a trading strategy that was purportedly low risk, and generated large and unmerited management fees for himself. (*Id.*, ¶¶ 2–4.) As a result, Plaintiffs allege they lost nearly $6 million. (*Id.*, ¶ 5.) The complaint also alleges Lee failed to obtain the required Nevada broker-dealer license. (*Id.*, ¶ 75.) Unlicensed dealing in securities gives rise to liability under § 90.660(1)(a).

The motion does not contend that these allegations fail to state a claim against Lee, or that Lee would not qualify as a principal wrongdoer under Nev. Rev. Stat. § 90.660(1). Instead, it argues the allegations are inadequate to state a claim against Castellanos or Ettore under § 90.660(4).

**Castellanos**

The motion argues that the complaint fails to cite any misrepresentations Castellanos made, any investor meetings she attended, or any reason why she should have known about Lee's background and warned investors.

The motion, however, misses some of the allegations, and misreads the statute. Under § 90.660(4), agents or employees, as well as people in certain other roles relative to the principal wrongdoer, can themselves be liable if they "materially aid[ ] in the act, omission, or transaction constituting the violation . . . ." In other words, Castellanos herself need not have made misleading statements or omitted to make disclosures necessary to avoid misleading investors, or actively misled investors herself in some other way. It is enough if she aided Lee when he misled them, or if she materially aided in his unlicensed sale of securities. The agent's or employee's actual or constructive knowledge of facts underlying the liability is not an element of the claim; rather, absence of such actual or constructive knowledge is a defense.

The complaint identifies Castellanos as Lee's secretary and alleges she aided Lee in his "fraudulent investment and trading scheme." (Compl., ¶¶ 9–10.) It alleges she lent the scheme an "air of legitimacy" by serving as the scheme's secretary, that she did all billing for Lee's management fees from the scheme, and that she did payroll for traders affiliated with the scheme. (*Id.*, ¶¶ 12, 190, 191.) It alleges she accessed Plaintiffs' investment accounts without authorization, reporting information from those accounts to Lee and using it to calculate Lee's management fees. (*Id.*, ¶¶ 13, 192.) It alleges she prepared the management fee invoices for investors, and told investors to pay the fees to two shell corporations instead of to Lee himself. (*Id.*, ¶¶ 99, 195–97.) It also alleges she assisted in Lee's violation of state licensing requirements by serving as director and sole officer for one of these shell corporations controlled by Lee, and allowing the corporation's bank account to be used as a depository for Lee's management fees, making it hard for authorities to discover his activities or track his income. (*Id.*, ¶¶ 15, 45, 197, 199–202.)

/ / /

The complaint also makes two ambiguous allegations involving Castellanos. It alleges that Lee "devised a scheme to defraud plaintiff investors, with the assistance of," *inter alia* Castellanos. (Compl., ¶ 69.) This might be read to mean Lee devised a scheme on his own, and that his plan was to defraud investors with the help of Castellanos and others. It could also be read to mean Castellanos and others assisted Lee in devising the scheme. Construing this allegation in Plaintiffs' favor, as the Court must on a motion for summary judgment, *see Cedars-Sinai*, 497 F.3d at 975, the Court reads this allegation to mean Castellanos assisted Lee in formulating his plan. Second, the complaint alleges Castellanos met with Lee and other employees "regarding the investment and trading business in December, 2010." (Compl., ¶ 44.) This allegation does not, by itself, show why Castellanos is liable, because it does not say whom she met with or what was said at the meeting(s). Plaintiffs' opposition to the motion to dismiss argues she met with Lee and investors, and also with traders who worked for Lee. (Opp'n to Mot. for Summ. J. at 3:1–7.) The opposition also argues that Lee either affirmatively or by omission made misrepresentations during the meeting(s) with investors, which Castellanos failed to correct. (*Id.* at 10:19–23.) While the complaint does not allege any of these details, the Court understands the opposition to mean Plaintiffs could allege these particular facts if given an opportunity to amend.

While the complaint does not allege as much as Plaintiffs' opposition suggests, it does allege enough, if accepted as true, to establish Castellanos' liability. She is alleged to have helped Lee collect management fees from investors, and hide them from authorities so that his fraudulent securities sales would go unnoticed. She is also alleged to have served as a front, inducing investors to trust Lee. While her collection of fees was not a part of the sale itself, if the Court accepts the factual allegations as true, she did materially aid the violation by making it profitable and by helping Lee avoid detection, which in turn allowed him to perpetuate it. In addition, when she helped Lee communicate with investors, and possibly had direct contact with them herself, she avoided informing them they were being misled about the securities deal, even though she knew or should have known they were.

/ / /

1  Accepting this as true, she would be liable for materially aiding Lee's misleading sales
2  pitches.

3  The complaint adds that Castellanos knew or should have known about Lee's history
4  with the SEC, because she worked at Lee's company when the he and the company were
5  given the SEC's Cease and Desist order. (Compl., ¶ 205.) It also alleges that she did not tell
6  any of the Plaintiffs about Lee's history with the SEC. (*Id.*, ¶ 206.) This is relevant, because
7  it is alleged she helped Lee communicate with investors by preparing fee invoices that were
8  given to them. Although not specifically alleged, it is reasonable to infer that as Lee's
9  secretary, Castellanos would have had access to information pertaining to matters she was
10 helping him with. This inference supports the allegations regarding what she knew or should
11 have known.

12 Assuming all these alleged facts to be true, Castellanos would be liable under Nev.
13 Rev. Stat. § 90.660(4) for materially aiding violations of  § 90.660(1)(a) and (d).  The
14 complaint therefore meets the required pleading standard.

15 **Ettore**

16 As it did with regard to claims against Castellanos, the motion to dismiss argues
17 Larissa Ettore's contact with investors was minimal and that she was never alleged to have
18 made any misrepresentations herself to investors. As with the other claim, the motion
19 misreads the statute and misses some of the allegations.

20 Larissa Ettore is alleged to be Lee's girlfriend, and the sister of a trader who worked
21 for Lee. (Compl., ¶ 7.) She is alleged to have been Lee's agent (*id.*, ¶ 16), aiding and abetting
22 his fraud in two main ways. First, the complaint alleged that she recruited investors and
23 attended investor meetings. (*Id.*, ¶¶ 17, 48, 209, 242–248, 341) and that although she knew
24 or should have known about his history with the SEC and that his claims regarding his
25 credentials were false, she never corrected his misrepresentations. (*Id.*, ¶¶ 18, 210–11.)
26 Second, the complaint alleges that Ettore served as the head for a second shell corporation,
27 different from the one Castellanos headed,  into which Lee's management fees were also
28 / / /

funneled, effectively hiding them from authorities in the same way Castellanos had done. (*Id.*, ¶¶ 19, 164, 212–14.)

Although the complaint does not allege it, Plaintiffs assert that they have learned that Ettore originally incorporated and initially headed the shell corporation that Castellanos later headed. (Opp'n at 12:14–17.) The complaint also makes the same ambiguous allegation that Lee "devised a scheme to defraud plaintiff investors, with the assistance of," *inter alia* Ettore. (Compl., ¶ 69.)

While an allegation, standing alone, that someone is an "agent" would be conclusory, the allegations here are fleshed out by more specific allegations, namely that she recruited investors in Lee's behalf, attended investor meetings, and headed a shell corporation on his behalf. While the complaint does not specifically explain how or why Ettore knew or should have known Lee was making misrepresentations regarding the investments or his own qualifications, it is reasonable to infer that as his long-time girlfriend who was invited to and attended investor meetings, and who recruited investors, she had an opportunity to know the truth about his qualifications and also to know the truth about the investment deal he was touting.

The factual allegations, taken as true, are enough to show that Ettore materially helped Lee mislead investors regarding the investments and his qualifications. Even though she herself did not mislead them, it is alleged that she materially helped Lee as he misled them, and that she knew or should have known he was misleading them. The complaint also alleges that she served as head of a shell corporation into which Lee's fees were paid, helping him his income from authorities, thus escaping detection and keeping the fraud going longer. This is enough to render the claims against her plausible, and to meet the pleading standards.

**Conclusion and Order**

For the reasons discussed above, the motion to stay, and the motion to dismiss, are both **DENIED**. Defendants shall promptly answer or otherwise respond to the complaint. This ///

matter is referred to Magistrate Judge William Gallo to hold a scheduling conference and issue a scheduling order in this case.

**IT IS SO ORDERED**.

DATED: March 13, 2015

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge