# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHRYN AYERS, et al., <br><br> Plaintiff, <br><br> vs. <br><br> JAMES YIU LEE, et al., <br><br> Defendant. | CASE NO. 14cv542-LAB (WVG) <br><br> **ORDER SUBSTITUTING COUNSEL;** <br><br> **ORDER DENYING MOTION TO DISMISS; AND** <br><br> **ORDER TO SHOW CAUSE RE: FAILURE TO SERVE AND FAILURE TO PROSECUTE CLAIMS AGAINST DEFENDANT TIMO ETTORE** |

**Substitution of Counsel**

On June 9, 2016, Jeffrey Albregts terminated his representation of Defendants James Yiu Lee ("JYL"), Connie Castellanos, and Larissa Ettore. Currently, Matthew Faust is the only attorney representing JYL. JYL has now filed a motion to substitute himself in, *pro se*, in place of Faust. (Docket nos. 82, 83.) That motion is **GRANTED**. JYL is now proceeding *pro se*. Connie Castellanos and Larissa Ettore continue to be represented by Faust.

The fact that JYL is now proceeding *pro se* should not be taken by the parties as a reason to delay preparation for trial. The parties should comply with the scheduling order and diligently take action to make this case ready for trial. *See* Civil Local Rule 16.1(b).

**Motion to Dismiss**

Defendants have filed a motion for partial dismissal under Fed. R. Civ. P. 12(b)(6). They ask the Court to dismiss the claims by Plaintiff S&J Lee Partners amended complaint with prejudice. (Docket no. 66.) The parties agree that Texas law governs Plaintiffs' claims.

**Legal Standards**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint. *Navarro v. Block,* 250 F.3d 729, 732 (9th Cir. 2001). Under Fed. R. Civ. P. 8(a)(2), only "a short and plain statement of the claim showing that the pleader is entitled to relief," is required, in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id*. at 555. "[S]ome threshold of plausibility must be crossed at the outset" before a case is permitted to proceed. *Id*. at 558 (citation omitted). The well-pleaded facts must do more than permit the Court to infer "the mere possibility of misconduct;" they must show that the pleader is entitled to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

When determining whether a complaint states a claim, the Court accepts all allegations of material fact in the complaint as true and construes them in the light most favorable to the non-moving party. *Cedars–Sinai Medical Center v. National League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007) (citation omitted). The Court does not weigh evidence or make credibility determinations. *Acosta v. City of Costa Mesa*, 718 F.3d 800, 828 (9th Cir. 2013). But the Court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint," and does "not . . . necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Warren v. Fox Family Worldwide, Inc*., 328 F.3d 1136, 1139 (9th Cir. 2003) (citations and quotation marks omitted).

**Discussion**

Plaintiffs allege that JYL defrauded them in connection with the sale of securities. According to the amended complaint, JYL made various misrepresentations that misled

them into investing through him, resulting in a total loss of about $5.5 million. Specifically, they allege JYL:

- falsely claimed to be a bona fide investment advisor and broker-dealer with expertise in stocks and options trading. (Am. Compl., ¶ 73.)
- misled them into believing he had the appropriate credentials, expertise, and licensure to be an investment advisor and to trade on their behalf. (*Id*., ¶ 74.)
- falsely claimed to be an attorney, a tax attorney, a CPA, a Ph.D., a former Wall Street trader, and a former stockbroker for the Dean Witter brokerage and securities firm. (*Id*., ¶ 76.)
- falsely told plaintiffs he had trading teams in Hong Kong researching the market and possible securities trades. (*Id*., ¶ 78.)
- failed to mention that he had a criminal record, including a conviction for fraud. (*Id.*, ¶ 80.)
- did not mention that the SEC had issued a Cease and Desist Order against him in 2008, or other trouble he had had with the SEC. (*Id*., ¶¶ 81, 84.)
- explained his supposedly proprietary investment strategy, which he described as safe and able to bring a return in "whatever amount [they] needed," in any type of market. (*Id*., ¶ 85–87.)
- never explained the riskiness of the investments he was advocating. (*Id*., ¶ 88.)
- never warned Plaintiffs about the exposure they faced by trading in options, *i.e.*, that they risked losing even more money than they had invested. (*Id*., ¶¶ 89, 91.)
- falsely promised that if Plaintiffs lost money, he would cover half of investors' losses. (*Id.*, ¶¶ 87, 93.)
- falsely promised to implement an automatic stop-loss mechanism. (*Id.*, ¶ 92.)
- falsely claimed to be a billionaire. (*Id*., ¶ 107.)

They also allege other misrepresentations regarding management fees, how JYL carried out trading, and other aspects of the investment scheme.

Plaintiffs allege that they believed JYL's claims, and concluded that investing with him was relatively safe. (Am. Compl., ¶¶ 105–11.) As a result, they invested large amounts of money with JYL. (*Id.*, ¶¶ 112–13.) Had they known the truth, they would not have invested with JYL. (*Id.*, ¶¶ 114–16.) Plaintiffs also allege JYL undertook investment strategies he had not disclosed, which exposed them to great risk. These included 3-1 leverage of their accounts. (*Id.*, ¶¶ 125, 127.) As a result, Plaintiffs were subject to margin calls, and lost a great deal of money, which JYL also failed to disclose. (*Id.*, 135–38.) Some Plaintiffs began discovering JYL's misrepresentations, but he blamed the market for the losses, and reassuring them their losses could be recovered. (*Id.*, ¶¶ 142–144.) Gradually in late 2011 and early 2012, after Plaintiffs had already suffered losses, they discovered his misrepresentations. Plaintiffs also allege the other Defendants assisted JYL with this scheme.

Defendants' motion to dismiss focuses on advice Joon Lee, head of Plaintiff S&J Lee Partners, received from his broker. According to the Amended Complaint, Joon Lee asked his broker about investing in options. (Am. Compl., ¶ 387.) His broker cautioned him that there was an 80% chance of losing money and a 20% chance of making money. (*Id.*) Joon Lee then met with JYL, who gave him contradictory advice, saying there was an 80% chance of making money and a 20% chance of losing money, and making other promises and representations that allayed Joon Lee's concerns. (*Id.*, ¶¶ 388–89, 391.)

Defendants cite provisions of Texas security law providing that a buyer cannot recover if he knew the seller's or investment advisor's statements were false. *See* Tex. Rev. Stat. Ann. ¶¶ 581-33(A)(2), 581-33-1(C). This alone does not help them, because, accepting all of Plaintiffs' allegations as true, Joon Lee did not know JYL's statements were false. At most, it can be said that he might have suspected them to be false.

Defendants also cite *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 217 (Tx. 2011) for the principle that, to recover, a plaintiff must have actively and justifiably relied on a misrepresentation. This opinion does not explain what is meant by "justifiably," but other cases have treated it as equivalent to "reasonably." *See, e.g., Southwestern Bell*

*Telephone Co. v. Fitch*, 801 F. Supp. 2d 555, 586 (S.D. Texas, 2011). Whether reliance on a representation was reasonable is a question of fact for the jury. *See, e.g., Orca Assets, G.P., L.L.C. v. JPMorgan Chase Bank, N.A.*, 2015 WL 4736786, at *9 (Tex. App., Aug. 11, 2015).

Furthermore, Defendants fail to address the remainder of the alleged misrepresentations and omissions. There is no suggestion that Joon Lee's broker advised him about JYL's qualifications or accomplishments, or JYL's promises to cover half of investors' losses or to put in place a stop-loss mechanism.

To the extent Defendants argue that Joon Lee should not have allowed JYL to allay his suspicions, or that he should have investigated further, their arguments lack merit. In *Isenhower v. Bell*, 365 S.W.2d 354 (Tex. 1963) the Texas Supreme Court held that in a fraud case, a plaintiff's failure to exercise reasonable diligence is <u>not</u> a defense:

> Where one has been induced to enter into a contract by fraudulent representations, the person committing the fraud cannot defeat a claim for damages based upon a plea that the party defrauded might have discovered the truth by the exercise of proper care.

365 S.W.2d at 357. This rule has been followed in later cases, and continues to be treated as good law by Texas courts. *See, e.g., Koral Indus. v. Security-Connecticut Life Ins. Co.*, 802 S.W.2d 650, 651 (Tx. 1990) ("Failure to use due diligence to suspect or discover someone's fraud will not act to bar the defense of fraud to the contract."); *Nancarrow v. Whitmer*, 463 S.W.3d 243, 254 (Tx. App., 2015) (same). In other words, a plaintiff's reliance can be justifiable or reasonable even if under the circumstances a diligent buyer would have been suspicious or would have investigated.

Furthermore, the statutory language provides an exception only if the buyer "<u>knew</u> of the untruth or omission". Tex. Rev. Stat. Ann. ¶¶ 581-33(A)(2), 581-33-1(c)(1) (emphasis added). It is clear "knew" does not include "should have known" or "should have investigated". The adjacent provision in each statute provides a defense for offerors, sellers, or investment providers who "did not know, <u>and in the exercise of reasonable care could not have known,</u> of the untruth or omission." ¶¶ 581-33(A)(2), 581-33-1(c)(2). If a buyer's mere

suspicion or failure to make reasonable investigation were a defense, the statute would have mentioned it.

**Order on Motion**

It is possible that a jury might find Joon Lee in fact knew what JYL told him was false, and Defendants are free to pursue this theory at trial. But what he knew or believed, and whether his reliance was justifiable are questions for the jury, and not for the Court to resolve at this stage. *See Acosta*, 718 F.3d at 828. Accepting all allegations as true, and drawing all reasonable inferences in S&J Lee Partners' favor, the Amended Complaint's allegations are sufficient to state a claim. The motion to dismiss is therefore **DENIED**.

**Order to Show Cause re: Failure to Serve and to Prosecute**

Although a summons was issued as to Timo Ettore, he has not appeared[1] and no proof of service has been filed. It is not apparent that Plaintiffs have prosecuted their claims against him.

Under Fed.R. Civ. P. 4(m), if a Defendant is not served within 90 days after the complaint is filed, either the action must be dismissed or the Court must order that service be made within a specified time. If the Plaintiffs show good cause for failure to serve, the Court must extend the time for service by an appropriate period of time. The Court is also authorized to dismiss actions for failure to prosecute. *See Link v. Wabash Railroad Co.*, 370 U.S. 626 (1961) (court may sua sponte dismiss action for failure to prosecute); Fed. R. Civ. P. 41(b); Civil Local Rule 41.1.

Plaintiffs are therefore **ORDERED TO SHOW CAUSE** why their claims against Timo Ettore should not be dismissed for failure to serve and to prosecute. They may do so in one of two ways. If this Defendant has been served but has not answered, they may file proof of service no later than **August 3, 2016**, then promptly request entry of default and move for default judgment. If he has not yet been served, they should file a memorandum of points and authorities, showing good cause both for failure to serve and failure to prosecute. If they

---

[1] The docket says proof of service was filed on Timo Ettore's behalf (Docket no. 36), but this appears to be an error; the document was filed on behalf of James Yiu lee, Connie Castellanos and Larissa Ettore only.

choose the latter option, their memorandum should not exceed seven pages (not counting any appended or lodged material) and should be filed by **August 10, 2016**. **If Defendants fail to show cause within the time permitted, claims against Timo Ettore will be dismissed without prejudice**.

**IT IS SO ORDERED**.

DATED:  July 27, 2016

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge