UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Kathryn Ayers, et al.,<br><br>　　　　　　　　　Plaintiffs,<br><br>v.<br><br>James Yiu Lee, et al.,<br><br>　　　　　　　　　Defendants. | Case No.: 14cv542-BGS (NLS)<br><br>**ORDER REGARDING WAIVER OF POTENTIALLY PRIVILEGED COMMUNICATIONS BETWEEN DEFENDANT ETTORE AND FORMER DEFENDANT LEE MADE VIA BUREAU OF PRISONS COMMUNICATIONS SYSTEMS**<br><br>**[ECF Nos. 168-171]** |

## I.　　INTRODUCTION

This case concerns a fraudulent investment scheme by former Defendant James Y. Lee ("former Defendant Lee"). Former Defendant Lee pled guilty to obstructing justice and securities fraud, is incarcerated, and has had judgment entered against him in this action as well as in two related civil actions, *SEC v. Lee, et al.* (14cv347-LAB-BGS) and *SEC v. Lee* (14cv1737-LAB-BGS). (*See* ECF No. 143.) Plaintiffs Pamela Bridgen and Hal Blatman ("Plaintiffs") and Defendant Larissa Ettore ("Defendant Ettore") are the only remaining parties in this action. Currently, they are engaged in a dispute regarding the potentially privileged nature of phone calls and emails between Defendant Ettore and former Defendant Lee that occurred while he was incarcerated in federal Bureau of Prisons

1

14cv542-BGS (NLS)

facilities. Plaintiffs sought to obtain these communications via a Rule 45 subpoena issued to the Bureau of Prisons (*see* ECF No. 162-63) and the parties' briefing addressing the potentially privileged nature of these communications is currently before the Court. (*See* ECF Nos. 170-71.)

For the reasons set forth below, the Court finds that Defendant Ettore has failed to establish the applicability of the attorney-client privilege to the communications at issue. Additionally, the Court finds that Defendant Ettore has failed to establish with some evidence the existence of a joint defense agreement between herself and former Defendant Lee. Regardless of whether such an agreement existed, the Court finds she and former Defendant Lee failed to maintain the confidentiality of their communications via their use of monitored Bureau of Prisons communications systems. Thus, any privilege over their communications has been waived.

Accordingly and consistent with this order, **IT IS ORDERED** that the Bureau of Prisons produce to Plaintiffs: (1) all 56 emails withheld on the basis of potentially being privileged pursuant to the Court's prior order (ECF No. 167) and (2) recordings of all in-prison phone conversations between Defendant Ettore and former Defendant Lee.

## II. BACKGROUND

### A. Plaintiffs' Rule 45 Subpoena

To obtain emails and recorded conversations between Defendant Ettore and former Defendant Lee while he was incarcerated in federal facilities, Plaintiffs served a Rule 45 Subpoena on the Bureau of Prisons. (ECF No. 160; ECF No. 162-1 at 6.) On May 25, 2017, Plaintiffs filed an Ex Parte Application to Shorten Time for a Motion to Compel the Bureau of Prisons to Comply with Subpoenas in which Plaintiffs requested that the Bureau of Prisons produce all of former Defendant Lee's emails sent and received as well as copies of all tape recordings of former Defendant Lee's telephone conversations and visits. (ECF No. 160.) In its Order granting the ex parte application, the Court ordered Plaintiffs to revise the scope of the subpoena at issue in the underlying motion to compel. (ECF No. 161 at 3.) Plaintiff's underlying Motion to Compel was then docketed. (ECF No. 162.)

Subsequently, Plaintiffs filed supplemental briefing and a revised subpoena. (ECF No. 163.) In its June 8, 2017 Order granting in part Plaintiff's Motion for an Order Requiring Federal Bureau of Prison Compliance with Subpoenas, the Court limited the scope of the revised subpoena to only those communications between former Defendant Lee and Defendant Ettore. (*See* ECF No. 167 at 6-7.) Additionally, the Court directed the Bureau of Prisons to withhold any communications potentially subject to the attorney-client privilege. (*Id.*)

In response to the Court's June 8, 2017 Order, the Bureau of Prisons filed a Notice of Potentially Privileged Information Responsive to Plaintiff's Subpoena indicating there are 56 email communications between former Defendant Lee and Defendant Ettore that may contain attorney-client communications. (ECF No. 168 at 1.) They also withheld over 300 phone conversations between Defendant Ettore and former Defendant Lee, as they had not been reviewed for potentially privileged content. (*Id.*) Further, the Bureau of Prisons stated its position that (1) "because both the inmates and those corresponding with them are expressly advised that emails are monitored, any privilege for communications contained in emails is waived" and (2) because "BOP informs inmates (and those communicating with them) that their telephone calls are monitored and recorded", "these communications are not privileged." (*Id.* at 1-2 [citing 28 C.F.R. § 540.102].)

To allow the parties to fully address the potentially privileged nature of these communications, the Court ordered Defendant Ettore to serve a privilege log regarding any emails over which she claims are privileged and to provide supplemental briefing in support. (ECF No. 169.) The Court specifically ordered Defendant to: (1) "establish[ ] the applicability of the attorney-client privilege as to both emails and telephone calls initiated by former Defendant Lee to Defendant Ettore" as well as (2) address "[w]hether the attorney-client privilege has been waived given former Defendant Lee's and Defendant Ettore's use of the Federal Bureau of Prisons' communication systems (via both email and telephone calls)." (*Id.* at 2.)

On June 30, 2017, Defendant Ettore filed her supplemental briefing and served a

3

14cv542-BGS (NLS)

privilege log on Plaintiffs in which she claims all 56 emails withheld by the Bureau of Prisons are privileged. (ECF No. 170.) Defendant Ettore argues that the Bureau of Prisons should not be permitted to produce these in-prison communications as: (1) Defendant has not waived the attorney-client privilege and (2) even if waiver is found, the joint defense privilege serves as "an exception to the waiver of attorney client privilege." (ECF No. 170 at 1-2.) Plaintiffs argue the communications at issue should be produced as (1) there is no attorney involvement on the phone calls at issue and counsel is not copied on emails; (2) counsel did not represent both Defendant Ettore and former Defendant Lee on matters covered by emails;[1] and (3) Defendant Ettore, as well as former Defendant Lee, has waived any potential attorney-client privilege via the use of surveilled prison communication systems. (ECF No. 171 at 1-2.) These arguments are addressed below.

On August 3, 2018, the Court issued a Minute Order directing Defendant Ettore to file the 56 emails at issue under seal so that the Court could conduct an *in camera* review of the emails in full. (ECF No. 180.) Defendant Ettore did so on August 8, 2018. (ECF No. 183.) The Court has now completed it's *in camera* review of the emails at issue.

**B. Former Defendant Lee's Relevant Case History**

On May 12, 2016, former Defendant Lee filed a Motion to Substitute Counsel to represent himself *pro se*. (ECF No. 72.) The motion was denied as it was only signed by one of former Defendant Lee's two attorneys, Mr. Matthew Faust ("Attorney Faust"). (ECF No. 75.) An Amended Motion to Substitute Counsel (ECF No. 83) was granted on July 29, 2016 permitting former Defendant Lee to proceed pro se. (ECF No. 84.) Thus, former Defendant Lee was no longer represented by Attorney Faust in this action beginning on July 29, 2016. Of note, Attorney Faust remains counsel for Defendant Ettore. (*See* docket.) Default Judgment was entered against former Defendant Lee on March 3, 2017 and he was terminated as a party to this action. (ECF No. 143.)

---

[1] Because the Court has found that Defendant Ettore has waived any potential privilege regarding the communications at issue due to the use of monitored Bureau of Prisons communication systems, it does not address this argument.

### C. Communications at Issue

Defendant Ettore's privilege log includes all 56 withheld emails between herself and former Defendant Lee that were sent and received using the Bureau of Prison email system between April 8, 2016 and April 26, 2017. (ECF No. 169 at 2; ECF No. 171-2 [privilege log served on Plaintiffs].) The log claims that each of the 56 emails is protected by the attorney-client privilege. It provides a very brief description of the contents of the emails, many of which make it appear as though Defendant Ettore forwarded emails directly from Attorney Faust to former Defendant Lee. Following the Court's *in camera* review of the 56 emails at issue, it is apparent that Defendant Ettore's characterization of the 56 emails at issue is not entirely accurate. This is further discussed below.

The Court did not require Defendant Ettore to provide a privilege log for the over 300 phone calls at issue. (ECF No. 169.) Defendant Ettore maintains that all 300 or so of her phone calls with former Defendant Lee are privileged. (ECF No. 170 at 4.) However, these phone calls were only between Defendant Ettore and former Defendant Lee; they involved no attorneys. (ECF No. 170 at 4.) In her briefing, Defendant Ettore states that she "believes and recalls that during the 300 phone calls [at issue] they discussed the Ayers and SEC cases and also the legal advice provided by their mutual attorney." (*Id.* at 4.) However, neither Defendant Ettore nor former Defendant Lee provided a sworn declaration in support of the alleged content of the calls. (*See* ECF No. 170.)

### III. LEGAL STANDARDS

### A. Attorney-Client Privilege

Federal Rule of Evidence 501 states that "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501. Neither Plaintiffs nor Defendant address whether federal common law or Nevada law governs the applicability of the attorney-client privilege in this action.

Plaintiffs' remaining claim against Defendant Ettore in this action is a Nevada state claim.[2] (ECF No. ¶¶ 481-85.)

However, in the Ninth Circuit, "[w]here there are federal question claims and pendent state law claims present, the federal law of privilege applies." *Agster v. Maricopa Cnty.*, 422 F.3d 836, 839-40 (9th Cir. 2005) (citing Fed. R. Evid. 501 advisory committee notes). Here, the Court originally exercised federal question jurisdiction over Plaintiffs' federal claim pursuant to 15 U.S.C. § 78j and Securities Exchange Rule 10b-5 pursuant to 15 U.S.C. § 78aa, and supplemental jurisdiction over Plaintiffs' pendent state law claims. (*See* ECF No. 65 ¶¶ 33-34.) Accordingly, the Court applies federal privilege law to the claim at issue in this action.

The general privilege standard under federal law is that "confidential communications made by a client to an attorney to obtain legal services are protected from disclosure." *Clarke v. American Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992).

Information is covered by the attorney-client privilege if it meets an eight-part test:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009) (citations omitted). The burden is on the party asserting the privilege to establish all elements of the privilege. *United States v Martin*, 378 F.3d 988, 999-1000 (9th Cir. 2002); *United States v. Bauer*, 132 F.3d 504, 507 (9th Cir. 1997) (citation omitted); *see also Weil v. Inv./Indicators, Research &*

---

[2] The authority for Nevada's attorney-client privilege is statutory. Nevada Revised Statute § 49.095 states that "[a] client has a privilege to refuse to disclose, and to prevent any other person from disclosing, confidential communications: (1) Between the client or the client's representative and the client's lawyer or the representative of the client's lawyer. (2) Between the client's lawyer and the lawyer's representative. (3) Made for the purpose of facilitating the rendition of professional legal services to the client, by the client or the client's lawyer to a lawyer representing another in a matter of common interest." Nev. Rev. Stat. Ann. § 49.095.

*Mgmt., Inc.*, 647 F.2d 18, 25 (9th Cir. 1981) ("As with all evidentiary privileges, the burden of proving that the attorney-client privilege applies rests not with the party contesting the privilege, but with the party asserting it."). The privilege is narrowly construed. *Trammel v. United States*, 445 U.S. 40, 50 (1980); *Martin*, 278 F.3d at 999 ("[b]ecause it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed.").

As a general rule, "attorney-client communications made 'in the presence of, or shared with, third-parties destroys the confidentiality of the communications and the privilege protection that is dependent upon that confidentiality.'" *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578 (N.D. Cal. 2007); *see In re Pac. Pictures Corp.*, 679 F.3d 1121, 1126-27 (9th Cir. 2012) ("[V]oluntarily disclosing privileged documents to third parties will generally destroy the privilege."); *Cohen v. Trump*, No. 13-CV-2519-GPC WVG, 2015 WL 3617124, at *13 (S.D. Cal. June 9, 2015) ("As a general rule, the attorney-client privilege is waived by voluntary disclosure of private communications to third parties."). Further, the voluntary disclosure of privileged attorney-client communications constitutes waiver of the privilege as to all other such communications dealing with the same subject matter. *United States v. Zolin*, 809 F.2d 1411, 1415 (9th Cir. 1987). Any disclosure inconsistent with maintaining the confidential nature of the attorney-client relationship waives the privilege. *Id.*

**B. Common Interest or Joint Defense Privilege**

The joint defense privilege, also called the "common interest" privilege, is an exception to the rule that disclosure of an attorney-client communication to a third party destroys the confidentiality and thereby waives the privilege. *Nidec*, 249 F.R.D. at 578. The Ninth Circuit has recognized that the purpose of this privilege is to allow persons with a common interest to "communicate with their respective attorneys and with each other to more effectively prosecute or defend their claims." *United States v. Gonzalez*, 669 F.3d 974, 978 (9th Cir. 2012) (quoting *In re Grand Jury Subpoena*, 902 F.2d 244, 249 (4th Cir. 1990)). However, this is not "a separate privilege." *Pac. Pictures*, 679 F.3d at 1129. Instead, it is an extension of the attorney–client privilege, *Gonzalez*, 669 F.3d at 978, that

saves an otherwise waived privileged communication only where the communication is shared with the third party to further a matter of common legal interest, and the privilege itself has not otherwise been waived by the party who made the communication. *Nidec*, 249 F.R.D. at 578-80; *United States v. Bergonzi*, 216 F.R.D. 487, 495 (N.D. Cal. 2003) (common interest exception "applies where (1) the communication is made by separate parties in the course of a matter of common interest; (2) the communication is designed to further that effort; and (3) the privilege has not been waived.").

A joint defense agreement need not be written; instead, it "may be implied from conduct and situation, such as attorneys exchanging confidential communications from clients who are, or potentially may be, co-defendants or have common interest in litigation." *Gonzalez*, 669 F.3d at 979. However, as the joint defense privilege is an extension of the attorney-client privilege, the party asserting it "has the burden of establishing [the existence of an attorney-client relationship] and the privileged nature of the communication[s]." *United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010). The asserting party must produce adequate proof of the existence of a common interest agreement, showing why the privilege is applicable. *Whitney v. Tallgrass Beef Co. LLC*, No. 13 C 7322, 2015 WL 3819373, at *4 (N.D. Ill. June 18, 2015). The joint defense exception requires some evidence of an agreement to share information for the specific purpose of coordinating a common legal defense. *See United Food & Commercial Workers Local 1776 & Participating Employers Health & Welfare Fund v. Teikoku Pharma USA*, No. 14-MD-02521-WHO, 2016 WL 5906590, at *5 (N.D. Cal. Oct. 11, 2016) ("While Endo is correct that a joint defense agreement or other agreement sufficient to create a common interest need not be in writing, there still must be some evidence of an actual agreement between the parties."); *N. Am. Rescue Prod., Inc. v. Bound Tree Med., LLC*, No. 2:08-CV-101, 2010 WL 1873291, at *4 (S.D. Ohio May 10, 2010). "[A] shared desire to see the same outcome in a legal matter is insufficient to bring a communication between two parties within [the privilege]." *Pac. Pictures*, 679, F.3d at 1129.

///

## IV. DISCUSSION

### A. Mischaracterization of Emails Between Former Defendant Lee and Defendant Ettore and the Relevance of those Communications

As discussed above, based on the Court's *in camera* review of the 56 emails in question, Defendant Ettore's characterization of the emails in her privilege log and briefing is not accurate. According to Defendant Ettore, emails 1-34, 36-40, 42-45, 48 and 50-55 are emails sent from Defendant Ettore to former Defendant Lee, which contain forwarded emails from Attorney Faust to all his clients. (ECF No. 170 at 3.) Further, per Defendant Ettore's representations, emails 35, 41, 46, 47, 49 and 56 are emails[3] from former Defendant Lee to Attorney Faust discussing his case and asking for legal advice.[4] (*Id.* at 3-4).

Looking at the content of the actual emails in question, Defendant Ettore did not forward complete emails from Attorney Faust to former Defendant Lee as she purports to have done. Instead, it appears she copy and pasted portions of emails from Attorney Faust to his clients[5] and sent them on to former Defendant Lee oftentimes interweaving her own unrelated comments. It appears this was likely done in an attempt to shroud her own communications to former Defendant Lee under the veil of attorney-client privilege or obfuscate prison monitoring.

Additionally, Defendant Ettore was specifically cautioned by Attorney Faust to avoid forwarding his communications to former Defendant Lee. As Attorney Faust

---

[3] These emails appear to be sent from former Defendant Lee to Defendant Ettore. However, they are specifically addressed to Attorney Faust and signed by former Defendant Lee. These are the only emails formatted with a clear recipient and closing signature. Based on the log provided by the Bureau of Prisons, it is unclear if Defendant Ettore forwarded these emails to Attorney Faust, or if she was a recipient of the emails in addition to Attorney Faust.

[4] The majority of former Defendant Lee's emails to Attorney Faust are requests to set up legal calls. The others inform Attorney Faust of former Defendant Lee's decision to decline a deposition in this matter and detail the sending and receipt of documents between the two.

[5] Although, this is not even entirely clear, as Defendant Ettore rarely included opening salutations and never included a closing signature from Attorney Faust in the portions of Attorney Faust's emails she copy and pasted into emails she sent to former Defendant Lee.

"mentioned before", he advised Defendant Ettore to "be careful emailing this [email] to [former Defendant Lee], as doing so could waive attorney-client privilege." (Email 22 dated June 13, 2016.) This greatly undercuts Defendant Ettore's statement in her motion that she "reasonably believed that the communications in prison were privileged and protected." (*See* ECF No. 170 at 8.)

Examples of the types of comments Defendant Ettore interspersed with cut and pasted portions of Attorney Faust's emails include: (a) asking former Defendant Lee for advice on payment of counsel; (b) repeatedly providing former Defendant Lee with updated financial information regarding various accounts, including her father's accounts and trading accounts; (c) asking advice from former Defendant Lee regarding her father's decision to stop paying his mortgage and her father's concern over not knowing what to say to "whoever asks questions like how did you afford this house, what was your business, what happened to it etc."; (d) asking former Defendant Lee for advice on future real estate purchases; and (e) updating former Defendant Lee about foreclosure proceedings on her father's home. (Emails 4, 8, 28, 33, 38, 39, 42, 44, 50, 51, 52, 54, 55.)[6]

In past filings, Plaintiffs have detailed how the requested emails are relevant to the single cause of action against Defendant Ettore. (*See* ECF No. 163.) Specifically, they contend that Defendant Ettore is a part of an integrated network of crime overseen by former Defendant Lee. She is a node of communication and illicit business in that network. Her involvement in that network, and information about with whom she is communicating provided highly probative evidence of Defendant Ettore's state of mind in connection with her involvement with former Defendant Lee and her consistent pattern of aiding and abetting him in his frauds and enterprise in violation of the Nevada statute. (ECF No. 163 at 2.)

As highlighted above, given the types of comments made by Defendant Ettore in her

---

[6] This is not an exhaustive list of all potentially relevant communications Defendant Ettore interspersed with copy and pasted portions of Attorney Faust's emails.

emails to former Defendant Lee, these emails are relevant to the remaining claim in this action, alleged violations of the Nevada Securities Act, Nev. Rev. Stat. § 90.660(4).

### B. Defendant Has Failed to Establish the Communications are Subject to the Attorney-Client Privilege

The Court first addresses whether Defendant Ettore has proven the emails and telephone calls at issue are protected by the attorney-client privilege, and if so, whether or not it was waived by her use of the monitored Bureau of Prisons communication systems. A party claiming the attorney-client privilege must identify specific communications and the grounds supporting the privilege as to each piece of evidence over which privilege is asserted. *Martin*, 278 F.3d at 1000. Blanket assertions of the attorney-client privilege are extremely disfavored. Additionally, the communication must be between the client and lawyer for the purpose of obtaining legal advice. *Id.* And as the party asserting the attorney-client privilege, Defendant Ettore bears the burden of establishing that the privilege was not waived regarding the communications at issue. *In re Grand Jury Investigations*, 974 F.2d 1068, 1070-71 (9th Cir. 1992); *Hickman*, 329 U.S. at 510-12.

Defendant Ettore maintains that all 56 of the emails at issue as well as the over 300 phone calls between herself and former Defendant Lee are protected by the attorney-client privilege. (ECF No. 170 at 4-5.) She claims that all phone calls between herself and former Defendant Lee are privileged with the blanket statement because she "believes and recalls that during the 300 phone calls [she and former Defendant Lee] discussed the Ayers and SEC cases and also the legal advice provided by their mutual attorney." (ECF No. 170 at 4.) However, she provides no sworn declaration attesting to this fact. (*See* ECF No. 170 [providing neither a declaration from Defendant Ettore's counsel, Defendant Ettore nor former Defendant Lee attesting to the content of the communications between Defendant Ettore and former Defendant Lee].) Further, she states that the emails sent to and from former Defendant Lee are subject to the attorney-client privileged because they contain "forwarded emails from their mutual attorney discussing the case and providing legal advice." (*Id.* at 4.)

Defendant Ettore has not met her burden of identifying with specificity those communications she asserts are protected by the privilege. Instead she makes a blanket assertion of privilege as to all emails and calls. And, as discussed above, following the Court's *in camera* review of the 56 emails at issue, there are portions of the communications that clearly go beyond discussion of legal advice. The only communications that might be protected by the privilege would be those made by both former Defendant Lee and Defendant Ettore *in confidence* to Attorney Faust seeking his legal opinion when he was acting as counsel for both former Defendant Lee and Defendant Ettore. Defendant Ettore's burden would require her to redact only those communications which fit this fact scenario. She has failed to do so. To allow her another opportunity to review and redact the emails and calls where appropriate would be moot given that the Court also finds she has waived any potential attorney-client privilege that could pertain to these communications via use of monitored Bureau of Prison communications systems.

Critically, Defendant Ettore fails to address the looming confidentiality issues at play here or provide any relevant case law addressing this issue. The fact is, the communications at issue were subject to monitoring by the Bureau of Prisons. As discussed above, communications are protected by the attorney-client privilege must be "made in confidence." *Ruehle*, 583 F.3d at 607; *see Nidec*, 249 F.R.D. at 578 ("attorney-client communications made 'in the presence of . . . third-parties destroys the confidentiality of the communications and the privilege protection that is dependent upon that confidentiality'"); *Pac. Pictures*, 679 F.3d at 1126-27 ("[V]oluntarily disclosing privileged documents to third parties will generally destroy the privilege."); *Cohen*, 2015 WL 3617124, at *13 ("As a general rule, the attorney-client privilege is waived by voluntary disclosure of private communications to third parties."). Numerous circuit courts have held that where an inmate is aware his or her calls are being recorded, those calls are not protected by the privilege. *See, e.g.*, *United States v. Mejia*, 655 F.3d 126, 133 (2d Cir. 2011); *United States v. Hatcher*, 323 F.3d 666, 674 (8th Cir. 2003); *United States v. Madoch*, 149 F.3d 596, 602 (7th Cir. 1998); *see also Arciero v. Holder*, No. 14-00506

LEK-BMK, 2015 WL 5769223, at *4-6 (D. Haw. Sept. 30, 2015) (finding waiver of the attorney-client privilege due to prisoner's use of monitored Bureau of Prison email system), *aff'd sub nom. Mapuatuli v. Sessions*, 714 F. App'x 730 (9th Cir. 2018). The presence of a recording device is the functional equivalent of the presence of a third party. *Hatcher*, 323 F.3d at 674.

Here, Defendant Ettore summarily claims that the prison provided the two of them (former Defendant Lee and Defendant Ettore) with no communication channels where the confidentiality of their communications would be protected. (ECF No. 170 at 5). This is a non-issue. The Bureau of Prisons' filing details the Bureau of Prison policy about noticing inmates and those communicating with them that their emails and telephone calls are recorded and monitored. (ECF No. 168 at 2 [citing 28 C.F.R. § 540.102]; *see* ECF No. 171 at 4-5 [outlining Bureau of Prison Procedures for Public and Confidential Communications]; ECF No. 171-1 at 2-3 [confirming that Taft Correctional Institution conforms to the requirements of 28 C.F.R. Part 540 and the procedures found in the Bureau of Prisons Program Statements].) Additionally, the Bureau of Prison regulations expressly allow inmates to communicate with their attorneys via telephone and mail without monitoring. *Mejia,* 655 F.2d at 133 [citing 28 CFR §§ 540.18-19]); *Arciero*, 2015 WL 5769223, at *5 (discussing other forms of confidential communication available when housed at a Federal Detention Center); (ECF No. 168 at 2-3 [detailing that the Bureau of Prison makes unmonitored telephone calls available for confidential, privileged attorney-client communications]; ECF No. 171-1 at 2-4). Moreover, the person invoking the attorney-client privilege must have taken steps to ensure that it was not waived. If a client wishes to preserve the privilege, he must take some affirmative action to preserve confidentiality. *Mejia,* 655 F.2d at 133 (citations omitted). No such actions were taken here.

This Court takes seriously the fact that, the ability of a defendant to "communication candidly and confidentially with his lawyer is essential to his defense." *Nordstrom v. Ryan*, 762 F.3d 903, 910 (9th Cir. 2014). However, this is not the issue at stake here. In the

present case, Defendant Ettore does not dispute that both she and former Defendant Lee were given the proper notices that their communications were being monitored and/or recorded. Further, she presents no affirmative evidence that she was prevented from utilizing procedures whereby she could have arranged a call between Attorney Faust, former Defendant Lee and herself which would be without monitoring. She took no affirmative steps to ensure the confidentiality of her communications with former Defendant Lee. Under these circumstances she cannot prove that her communications with former Defendant Lee were intended to be, and in fact were, kept confidential. To the extent Defendant Ettore's communications with former Defendant Lee are alleged by her to be privileged, she has waived that privilege due to the presence of the Bureau of Prisons as a third party on all phone calls and emails in question. *See Mejia*, 655 F.3d at 133 ("where an inmate is aware that his or her calls are being recorded, those calls are not protected by a privilege"); *Hatcher*, 323 F.3d at 674 ("[t]he presence of the prison recording device destroyed the attorney-client privilege"); *Madoch*, 149 F.3d at 602 (finding marital communication privilege did not apply when spouse seeking to invoke privilege knew other spouse was incarcerated, as any expectation of confidentiality was unreasonable given "the well-known need for correctional intuitions to monitor inmate conversations"); *Arciero*, 2015 WL 5769223, at *4-6 (finding waiver of the attorney-client privilege via use of prison monitored email system and detailing the various forms of notice federal inmates and recipients of inmate emails receive informing them that their communications are being monitored, their communications will not be treated as privileged, and for recipients of inmate emails, that they are consenting to Bureau of Prison monitoring).

**C. Even Assuming the Communications Were Protected by the Joint Defense Privilege, Defendant Ettore and Former Defendant Lee Waived Any Privilege via Use of Monitored Bureau of Prisons Communications Systems**

Defendant Ettore argues that she and former Defendant Lee were pursuing a common interest during the time period when the communications at issue were made. She

14

14cv542-BGS (NLS)

claims that from the filing of the complaint to the June 30, 2017 there has been an implied joint defense agreement between former Defendant Lee and herself. Although there was no written agreement, they understood that everything said between them would be confidential and protected. (ECF No. 170 at 7-8.) She further alleges that although former Defendant Lee is no longer a party to the case, "Plaintiffs can still reassert their claims against him." (ECF No. 170 at 8.)[7] Therefore, at the time many of the communications at issue were made, they continued to share a common interest. *Id.* at 8-9.

It is true that a joint defense agreement need not be written; instead, it "may be implied from conduct and situation, such as attorneys exchanging confidential communications from clients who are or potentially may be co-defendants or have common interest in litigation." *Gonzalez*, 669 F.3d at 979. However, as the joint defense privilege is but an extension of the attorney-client privilege, the party asserting it "has the burden of establishing [the existence of an attorney-client relationship] and the privileged nature of the communication[s]." *Graf*, 610 F.3d at 1156. The asserting party must produce adequate proof of the existence of a common interest agreement, showing why it is applicable. *Whitney*, 2015 WL 3819373, at *4. Critically, "a shared desire to see the same outcome in a legal matter is insufficient to bring a communication between two parties within [the privilege]." *Pac. Pictures*, 679 F.3d at 1129.

Here, Defendant Ettore has not provided adequate evidence of the existence of a common interest agreement to share information for the specific purpose of coordinating a common legal defense. Counsel has made unsubstantiated statements as detailed above about an implied agreement, but has provided nothing else to substantiate such an agreement existed, such as supporting declarations from counsel, Defendant Ettore, or former Defendant Lee. Further, even assuming the existence of an agreement during some of these communications, Defendant Ettore has not identified with specificity only those

---

[7] However, Defendant Ettore cites no authority supporting this assertion in light of the fact that default judgment has already been entered against former Defendant Lee as to those claims. (*See* ECF No. 143 [default judgment entered March, 3, 2017, prior to emails 52 to 56].)

parts of the communications that were made in furtherance of that common legal defense.[8]

Notwithstanding, the Court need not decide whether such a common interest agreement existed between Defendant Ettore and former Defendant Lee, the date range of that agreement, and which parts of any of their communications, if any, would fit within that agreement, because both Defendant Ettore and former Defendant Lee have waived any such agreement due to their knowing use of the Bureau of Prison's monitored communications systems. As Defendant Ettore correctly points out in her supplemental memorandum, the three elements of the common interest privilege are: (1) communications were made at the time when both former Defendant Lee and Defendant Ettore were pursuing a common interest; (2) the communications were designed to further their joint defense efforts; and (3) the common interest privilege was not waived. (ECF No. 170 at 7-8). As held in the previous section regarding waiver of the attorney-client privilege, the same waiver principles apply here as well. So, even assuming Defendant Ettore had established the existence of a joint defense agreement, Defendant Ettore and former Defendant Lee's use of the Bureau of Prison's monitored communications systems constitutes a waiver of any communications that could potentially fall under the protection of the joint defense privilege.

///
///
///
///
///
///
///
///

---

[8] And, as discussed above, there are portions of the withheld emails which clearly were not made in furtherance of a common legal defense.

## V. CONCLUSION

Accordingly, for the reasons discussed above, the Court hereby **ORDERS** the Bureau of Prisons produce to Plaintiffs: (1) all 56 emails withheld on the basis of potentially being privileged pursuant to the Court's prior order (ECF No. 167) and (2) recordings of all in-prison phone conversations between Defendant Ettore and former Defendant Lee no later than **December 28, 2018**. The Court will issue a scheduling order governing the remainder of the case in due course.

**IT IS SO ORDERED.**

Dated: December 14, 2018

Hon. Bernard G. Skomal
United States Magistrate Judge