1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

Kathryn AYERS, et al.,

Plaintiffs,

v.

James Yiu LEE, et al.,

Defendants.

Case No.: 14-cv-00542-BGS-NLS

**ORDER GRANTING IN PART PLAINTIFFS' MOTION REGARDING THE ISSUE PRECLUSIVE EFFECT OF FACTS AND CONCLUSIONS OF LAW IN SEC v. LEE FOR THIS ACTION**

**[ECF No. 204]**

## I.   INTRODUCTION

Plaintiffs move this Court to determine if certain issues decided in the previous SEC litigation, 14-cv-00347-LAB-BGS (hereinafter "SEC case"), are collaterally estopped in the present case. (*See* ECF Nos. 204; 215.) Defendant Larissa Ettore (hereinafter "Ettore") opposes Plaintiffs' motion. (ECF No. 210.) The Court will address each parties' contentions within the body of this Order.

## II.   LEGAL STANDARD

The doctrine of issue preclusion prevents the relitigation of all "'issues of fact or law that were actually litigated and necessarily decided' in a prior proceeding." *See Americana Fabrics, Inc. v. L & L Textiles, Inc.*, 754 F.2d 1524, 1529 (9th Cir. 1985) (citing *Segal v.*

*American Tel. & Tel. Co.,* 606 F.2d 842, 845 (9th Cir. 1979)). "In both the offensive and defensive use situations, the party against whom estoppel[, i.e. issue preclusion,] is asserted has litigated and lost in an earlier action." *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 329 (1979). "The issue must have been 'actually decided' after a 'full and fair opportunity' for litigation." *Robi v. Five Platters, Inc.*, 838 F.2d 318, 322 (9th Cir. 1988) (citing 18 CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION § 4416 (3d ed. 1981)).

Under the Full Faith and Credit Act, federal courts must give "state judicial proceedings 'the same full faith and credit [. . .] as they have by law or usage in the courts of [the] State [. . .] from which they are taken.'" *See Parsons Steel, Inc. v. First Alabama Bank,* 474 U.S. 518, 519 (1986); *see also* 28 U.S.C. § 1738. This Act requires federal courts to apply the *res judicata* rules of a particular state to judgments issued by courts of that state. *See Parsons Steel, Inc.,* 474 U.S. at 523. Accordingly, we apply California law of *res judicata* to the California judgment, New York law to the New York judgment, and federal law to the federal judgments. *See id.* at 523–26. Here, the SEC case involves a federal judgment.

Under federal law, "[w]hen an issue of fact or law is actually litigated and determined by a final and valid judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *United States v. Hernandez*, 572 F.2d 218, 220–21 (9th Cir. 1978) (citing RESTATEMENT OF THE LAW (SECOND): JUDGMENTS, § 68 (Tent. Draft No. 1, March 28, 1973)).

Collateral estoppel precludes a party from relitigating an issue if (1) the issue at stake is identical to the one alleged in the prior litigation; (2) the issue was actually litigated in the prior litigation; and (3) the determination of the issue in the prior litigation was a critical and necessary part of the judgment in the earlier action. *See Figueroa v. Campbell Indus.*, 45 F.3d 311, 315 (9th Cir. 1995); *Clark v. Bear Stearns & Co.*, 966 F.2d 1318, 1320 (9th Cir. 1992); *Hernandez*, 572 F.2d at 220–21 ("The collateral estoppel analysis involves a

three-step process: (1) An identification of the issues in the two actions for the purpose of determining whether the issues are sufficiently similar and sufficiently material in both actions to justify invoking the doctrine; (2) an examination of the record of the prior case to decide whether the issue was "litigated" in the first case; and (3) an examination of the record of the prior proceeding to ascertain whether the issue was necessarily decided in the first case.").

Under federal law, while the availability of issue preclusion in a particular case is a question of law, the decision of whether to apply the doctrine is vested in the trial court's discretion. *See In re Daily,* 47 F.3d 365, 368 n. 6 (9th Cir. 1995); *Davis & Cox v. Summa Corp.,* 751 F.2d 1507, 1519 (9th Cir. 1985); *In re Gottheiner,* 703 F.2d 1136, 1139 (9th Cir. 1983). As to offensive collateral estoppel, the Supreme Court concluded that the preferable approach for dealing with these problems in federal court "is not to preclude the use of offensive collateral estoppel, but to grant trial courts broad discretion to determine when it should be applied." *Parklane Hosiery Co.*, 439 U.S. at 331. "The general rule should be that in cases where a plaintiff could easily have joined in the earlier action or where, either for the reasons discussed above or for other reasons, the application of offensive estoppel would be unfair to a defendant, a trial judge should not allow the use of offensive collateral estoppel." *Id.*

## III.   ANALYSIS

Plaintiffs contend that the issue of secondary liability under NRS § 90.660(4) was resolved in the SEC case. (ECF No. 204-1 at 7.) Plaintiffs assert that the SEC case resolved that Ettore was an agent of Defendant James Y. Lee (hereinafter "Lee") and that she was an officer and director of Lee through ELX and SOT, both within the meaning of NRS § 90.660(4). (*Id.*) Plaintiffs further argue that the SEC case revealed the relationship between Ettore and Lee and the shell corporations, and how Lee manipulated the victims and shielded illicit gains from the view of regulators with Ettore's support. (ECF No. 215 at 4–5; *see also* ECF No. 204-1 at 3–5 (Plaintiffs citing to facts alleged in the SEC complaint and claim they were litigated in SEC case).)

## A. Prong 1

Under Prong 1 of the collateral estoppel doctrine, Plaintiffs must prove that the issues at stake between the two cases are identical or substantially identical. *See Figueroa*, 45 F.3d at 315. Under NRS § 90.660(4), agents or employees, as well as people in certain other roles relative to the principal wrongdoer, can themselves be liable if they "materially aid[ ] in the act, omission, or transaction constituting the violation[.]" The agent's or employee's actual or constructive knowledge of facts underlying the liability is not an element of the claim; rather, absence of such actual or constructive knowledge is a defense. *See* NRS § 90.660(4); *see also* (ECF No. 59 at 4). Applied to the present case, Ettore herself need not have made misleading statements or omitted making disclosures necessary to avoid misleading investors, or actively misled investors herself in some other way. It is enough if acting as Lee's agent, she materially aided Lee when he misled them, or if she materially aided in his unlicensed sale of securities.

In contrast, in the SEC case, Ettore was named as a Relief Defendant in the Complaint. (14-cv-00347-LAB-BGS, ECF No. 1 at 16.) As a Relief Defendant, the SEC sought equitable relief for unjust enrichment, i.e., investor funds received by Ettore under circumstances dictating that in equity and good conscience, she should not be allowed to retain the funds. (*Id.* at 16–17.) As a result, the SEC alleged that Ettore was liable for unjust enrichment and should be required to return her ill-gotten gains as determined by the Court. (*Id.*) For unjust enrichment, the SEC properly asserted that they only had to prove that the Relief Defendants, at Lee's direction, received management fees paid by Lee's clients and they did not have a legitimate claim to those ill-gotten funds. (14-cv-00347-LAB-BGS, ECF No. 46-1 at 29–30.) The SEC stated that it is "seeking disgorgement of Lee's ill-gotten gains—specifically, the commissions paid to the relief defendants at Lee's direction." (14-cv-00347-LAB-BGS, ECF No. 52 at 2.) A finding that Ettore received ill-gotten investor funds from Lee for which she was not entitled, suffices for a finding of disgorgement. (*See e.g.* 14-cv-00347-LAB-BGS, ECF No. 1 at 16–17.)

///

The only substantially similar factual issue necessary to prove the SEC case, i.e., Ettore's undeserved receipt of Lee's ill-gotten gains, and the present case, i.e., whether Ettore acting as an agent for Lee and materially aided him in his fraudulent scheme, was the existence of Lee's fraudulent scheme.  In their First Amended Complaint ("FAC"), Plaintiffs alleged substantially similar factual allegations concerning Lee's securities fraud scheme as that alleged in the SEC's complaint.  (*See* ECF No. 65 at 2; *see also* 14-cv-00347-LAB-BGS, ECF No. 1.)  The FAC alleges that Lee devised a scheme to defraud Plaintiff investors.  (ECF No. 65 at 9.)  The FAC alleges that Lee bought and sold securities on behalf of the Plaintiffs, by misrepresenting the nature of the investment and trading strategy, and by making material misrepresentations and omissions to the Plaintiffs.  (*Id.* at 52.)  Lee wanted the investors' agreement to share 50% of the gains with him, in the form of a monthly "management fee," and for the management fee to constitute payment for his investment advising services.  (*Id.* at 12.)

However, according to the Plaintiffs, the SEC case decided the relationship between Ettore and Lee and the shell corporations, and how Lee manipulated the victims and shielded illicit gains from the view of regulators with Ettore's support.  (ECF No. 215 at 4–5; *see also* ECF No. 204-1 at 3–5 (Plaintiffs citing to facts alleged in the SEC complaint and claim that they were litigated in that action).)  As for the Prong 1 analysis only, the factual allegations in the SEC case concerning Ettore's role in Lee's securities fraud are substantially identical to the facts also alleged in the FAC.

**B**. **Prong 2**

Under Prong 2, Plaintiffs must prove that the issues at stake were actually litigated in the prior litigation.  *See Figueroa*, 45 F.3d at 315.  Plaintiffs argue that because of Judge Burns' disgorgement sanction, the issues regarding the relationship between Ettore and Lee and the shell corporations, and how Lee manipulated the victims and shielded illicit gains from the view of regulators with Ettore's support, as detailed in the SEC complaint, were "actually litigated" in the SEC case and conclusively decided.  (ECF No. 215 at 4–5.)  "When an issue of fact or law is actually litigated and determined by a final and valid

judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *Hernandez*, 572 F.2d at 220–21 (citing RESTATEMENT OF THE LAW (SECOND): JUDGMENTS, § 68 (Tent. Draft No. 1, March 28, 1973)).

The Plaintiffs argue that the "actually litigated" prong, as regards to the factual allegations identified in the SEC's complaint, are deemed litigated where a default judgment was imposed as an abuse of the judicial process. (*See* ECF No. 204-1 at 3–6) (citing *In re Daily,* 47 F.3d 365 (9th Cir. 1995)).

Some exceptions exist to the general rule that issue preclusion does not apply to federal court default judgments. The bankruptcy court in *In re Daily* allowed the FDIC to use a district court default judgment to establish a nondischargeability claim against the debtor. 47 F.3d 365 (9th Cir. 1995). The Ninth Circuit affirmed the use of issue preclusion; however, the Ninth Circuit explicitly noted that the judgment entered in the case was not an ordinary default judgment. *Id.* at 368–69. Instead, the District Court had issued the default judgment as a sanction against the debtor for deliberate abuse of the judicial process. *Id.* Specifically, the Court found that Daily actively participated in the adversary process for almost two years prior to the FDIC's Motion for Default Judgment and did not simply give up. *Id.* at 368. As the bankruptcy court observed, "Daily had a full and fair opportunity to litigate the allegations contained in the [RICO complaint] but [instead] . . . chose not to participate in the discovery process and pre-trial proceedings[, and to] frustrate[ ] and thwart [ ] the FDIC's trial preparation[ ] and def[y] the [o]rder of the United States District Court compelling discovery." *Id.*

The holding in *Daily* is a limited one. The "actual litigation" requirement may be satisfied where a party deliberately precludes resolution of factual issues by obstructing the normal adjudicative process. *See id.* The Ninth Circuit indicated that "[a] party who deliberately precludes resolution of factual issues through normal adjudicative procedures may be bound in subsequent and related proceedings involving the same parties and issues, by a prior judicial determination reached without completion of the usual process of

adjudication."  *Id.* at 368.  In such a case, the "actual litigation" requirement may be satisfied by "substantial participation in an adversary contest in which the party is afforded a reasonable opportunity to defend himself on the merits but chooses not to do so."  *Id.*

Plaintiffs assert that the allegations in the SEC complaint, as recited in their motion, regarding Ettore's role in Lee's complex security fraud scheme are within the scope of the default judgement sanction as having been "actually litigated" and therefore conclusively decided.  (*See* ECF No. 204-1 at 3–7.)  The issue before that Court is in which, if any, of the factual allegations in the SEC complaint did Ettore substantially participate and deliberately preclude resolution through the normal adjudicative procedures.

On November 20, 2014, in the SEC case, the parties filed Joint Motion for Withdrawal of Relief Defendant Larissa Ettore's Answer and for Entry of Default.  (14-cv-00347-LAB-BGS, ECF No. 40.)  As part of this Joint Motion, Ettore admitted that she had not fully responded to discovery, withdrew her answer, and assented to the entry of default against her.  (*Id.* at 2.)

On March 17, 2015, the SEC filed its Motion for Default Judgment.  (*See* 14-cv-00347-LAB-BGS, ECF No. 46.)  On May 4, 2015, the Defendants' filed their Opposition to the SEC's Motion for Default Judgment, where Ettore disputed the amount of the ill-gotten gains.  (*See* 14-cv-00347-LAB-BGS, ECF No. 56.)  Ettore requested "this Court to reduce her disgorgement obligation by $263,086.17, and limit her personal liability as [R]elief [D]efendant to $79,708.25."  (*Id.* at 7–8.)  As to Lee's liability, the Relief Defendants' position was that there was "no evidence produced by the SEC that shows that the SEC-styled '[R]elief [D]efendants' bear any culpability in the offense for which Lee plead guilty. The [R]elief [D]efendants in this case find themselves in this position based solely upon their relationship to him."  (*Id.* at 16.)  Thereafter, Ettore filed a Declaration in Opposition to the SEC's Motion for Default Judgement.  (14-cv-00347-LAB-BGS, ECF No. 57-2.)  In that declaration, Ettore denied knowledge of Lee's fraudulent scheme, and claimed she borrowed and paid back $33,000.00 from ELX.  (*Id.* at 2.)

///

On March 7, 2016, Judge Burns issued an Order denying the SEC's Motion for Default Judgment.  (14-cv-00347-LAB-BGS, ECF No. 65.)  In that Order, Judge Burns summarized the Defendants' positions as follows:

> Defendants filed a joint opposition to the motion for default judgment. The relief defendants argue both that they are not responsible for James Lee's wrongdoing, and also that the amount being sought from them is inflated. Some ask that the disgorgement be reduced, and some ask that they not be ordered to disgorge anything. They also argue that, because there was no scienter on their part, they be relieved of any obligation to pay prejudgment interest. In short, some of them are willing to pay some of the requested disgorgement, but not all of it. The opposition denies James Lee's liability and asks that the Court not award a civil penalty or prejudgment interest.

(*Id.* at 2.)   Additionally, Judge Burns noted that Ettore asked that her disgorgement obligation "be reduced by over $260,000 and her personal liability be limited to just under $80,000." (*Id.* at 4.)

In sum, the only factual issue Ettore disputed in her opposition was the amount of money she received from Lee to which she was not entitled under the unjust enrichment claim.  Ettore did not dispute that Lee was involved in a scheme to defraud.  Ettore only disputed whether she knew of it when she received the money from Lee.[1]

On December 6, 2016, this Court issued its Report and Recommendation ("R&R") that recommended terminating sanctions in the SEC case, which laid out the sanctionable conduct committed by Ettore.  (*See* 14-cv-00347-LAB-BGS, ECF No. 99.)  In that R&R, the Court summarized the discovery upon which the sanction was granted:

> On March 7, 2016, the Honorable Judge Burns denied Plaintiff's Motion for Default against the Relief Defendants in this case.  Shortly thereafter, the parties contacted the Court to discuss the need to reopen discovery. (ECF No. 69.) The parties agreed on a limited reopening of discovery, and filed a Joint Motion so stating. (ECF No. 71.) This Joint Motion specified that the parties could serve Rule 34 document requests limited to the issue of disgorgement for the Relief Defendants and the anticipated deposition testimony of Relief

---

[1] Ettore's intent is not an element of the Plaintiffs' claim against her, rather an affirmative defense. (*See* ECF Nos. 46-1 at 29–30; 56 at 7–8.)

14-cv-00542-BGS-NLS

Defendants Ettore, Gatchalian and Clayton Lee. (ECF No. 71 at 5.) The Joint Motion also allowed for the depositions of the Relief Defendants. (Id.) The Court granted this Joint Motion and set forth deadlines for the completion of discovery. (ECF No. 72.)

(14-cv-00347-LAB-BGS, ECF No. 99 at 2.)   Specifically, the parties agreed, "[g]iven Defendant Lee's stipulation and anticipated settlement, *the parties jointly submit that the trial in this matter should be limited to a bench proceeding to determine the amount, if any, of equitable disgorgement to be imposed on the Relief Defendants*."  (14-cv-00347-LAB-BGS, ECF No. 71 at 4) (emphasis added).

On January 12, 2017, Judge Burns adopted this Court's R&R and ordered the terminating sanction of default judgment.  (14-cv-00347-LAB-BGS, ECF No. 101.)  In that Order, Judge Burns indicated that he had previously denied the SEC's Motion for Default Judgment, noting that the Relief Defendants had appeared and were actively trying to defend.  (*Id.* at 3.)  Judge Burns stated that the parties then agreed to reopen discovery, "*and their request for limited discovery was granted*."  (*Id.*) (emphasis added).  But instead of cooperating, the Relief Defendants began engaging in tactics that can only be called obstructionist, which are outlined in detail in the R&R.  (*Id.*)  The tactics included, among other things, Relief Defendants' refusal to comply with discovery requests, their disobedience to the Court's orders, and their refusal to attend either their own depositions or the mandatory settlement conference.  (*Id.*)

The "actual litigation" requirement may be satisfied by substantial participation in an adversary contest where a party was afforded the reasonable opportunity to defend herself or himself on the merits, but chooses not to.  *See In re Daily*, 47 F.3d at 36.  In determining whether a party actively participated in litigation for purposes of issue preclusion, cases consider the nature and extent of participation in the litigation by the party against whom issue preclusion is to be invoked.  *In re Child*, 486 B.R. 168, 174 (B.A.P. 9th Cir. 2013) (citations omitted).  Various factors that are considered are "whether a party (i) answers the complaint, (ii) files pleadings such as motions or oppositions, (iii) appears and participates at hearings, conferences and trials, (iv) engages in discovery, and (v) is

represented by counsel." *Id.*

In the SEC case, Ettore withdrew her Answer to the Complaint before she filed an Opposition to the SEC's Motion for Default. (*See* 14-cv-00347-LAB-BGS, ECF Nos. 40, 43, 44, 46, 56 at 2.) Although represented by counsel, Ettore limited her participation in the adversary process to the Court's determination to the amount, if any, of equitable disgorgement to be imposed on the Relief Defendants. (*See* 14-cv-00347-LAB-BGS, ECF No. 71 at 4–5.) After the Court's order granting limited discovery in this issue, Ettore did not file any other pleadings or motions concerning her disgorgement liability. No trial was held nor were there any hearings on this issue.

In sum, the only part of the adversary process to which Ettore deliberately precluded resolution was the amount of money she received under the SEC's unjust enrichment claim against her. As such, the Court finds that her substantial participation in the litigation involved the amount of her disgorgement, not her role in Lee's fraudulent scheme. This issue was the only part of the adversary process in which Ettore was afforded a reasonable opportunity to defend, and therefore is deemed to have been "actually litigated" under *In re Daily*.[2]

The doctrine of issue preclusion prohibits relitigating issues that have been adjudicated in a prior action. *Lopez v. Emergency Serv. Restoration, Inc. (In re Lopez)*, 367 B.R. 99, 104 (B.A.P. 9th Cir. 2007). "The party asserting issue preclusion bears the burden of proof as to all elements and must introduce a sufficient record to reveal the controlling facts and the exact issues were litigated." *In re Kirkland*, No. ADV.03-01086, 2008 WL 8444824, at *7 (B.A.P. 9th Cir. 2008) (citing *Kelly v. Okoye (In re Kelly)*, 182 B.R. 255, 258 (B.A.P. 9th Cir. 1995)). The Court finds that the Plaintiffs, relying on the

---

[2] As noted in the Prong 1 analysis, Lee's scheme to defraud investors in the SEC case and the present case are substantially identical and material in both the SEC's disgorgement claim and the NRS § 90.660(4) claim against Ettore. However, the Court finds Lee's fraudulent scheme was not "actually litigated" in the SEC case since Ettore did not dispute this issue, and therefore was not part of the adversary process. As such, Ettore did not deliberately preclude its resolution, nor was she afforded a reasonable opportunity to defend on this issue.

*In re Daily* exception, have met their burden under the "actually litigated" prong, only as to the disgorgement amount that Ettore received from Lee to which she was not entitled.[3] (*See* 14-cv-00347-LAB-BGS, ECF No. 103 at 3.)

### C. Prong 3

Prong 3 requires a determination of the issues in the prior litigation that must have been a critical and necessary part of the judgment in the earlier action. *See Figueroa*, 45 F.3d at 315. The general rule is that in order to justify invoking collateral estoppel, a factual determination must have been "necessarily" (and not "presumably") decided in the first proceeding. *Pettaway v. Plummer*, 943 F.2d 1041, 1044 (9th Cir. 1991) (although "[d]iscussion of the necessity prong of collateral estoppel analysis is usually framed in terms of determinations that were necessary to the 'judgment' or the 'verdict' [. . .] [t]he primary purpose of the rule [. . .] is to ensure that the finder of fact in the first case took sufficient care in determining the issue."); *Hernandez,* 572 F.2d at 220; *see also* 18 CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION § 4421 (3d ed. 1981).

The material issues argued by the Plaintiffs in the present case regarding whether Ettore was an agent and/or officer of Lee and whether she materially aided Lee in his fraud scheme and/or his unlicensed sale of securities, were not present in the SEC case. (*See* ECF No. 204-1 at 5–7; *see also* 14-cv-00347-LAB-BGS.) Whether Ettore was an agent of Lee when she received these funds, or whether her receiving these funds materially aided in Lee's scheme, were not necessary and critical issues in the SEC case. The critical and necessary issue in the SEC case was whether she received ill-gotten gains from Lee to which she was not entitled.

///

---

[3] The other selected sections of the SEC complaint cited by the Plaintiffs were not the subject of the limited discovery to which the Court found that Ettore deliberately precluded resolution. The discovery sanction order dealt with Ettore's conduct during the limited discovery to address the amount of disgorgement, not Ettore's role in Lee's fraudulent scheme.

1   Plaintiffs take the view that Judge Burns' disgorgement sanction for Ettore's

2   obstructive and bad faith conduct also included factual findings that decided the

3   relationship between Ettore and Lee and the shell corporations, and how Lee manipulated

4   the victims and shielded illicit gains from the view of regulators with Ettore's support.

5   (ECF No. 215 at 4–5.)  In support of this argument, Plaintiffs cite to facts alleged in the

6   SEC complaint which detail Lee's fraudulent scheme and how Ettore, acting as his agent,

7   aided his fraudulent scheme.  (ECF No. 204-1 at 3–5.)

8   Thus, the issue presented is whether Judge Burns necessarily, and not presumably,

9   decided these factual allegations in the SEC case.   Judge Burns' Final Order of

10   Disgorgement in the SEC case, (14-cv-00347-LAB-BGS, ECF No. 103), stemmed from

11   another Order adopting this Court's R&R, (*See* 14-cv-00347-LAB-BGS, ECF Nos. 99,

12   101), which recommended terminating sanctions for discovery abuses.  In this Order, Judge

13   Burns adopted the R&R's factual findings, which included the case's procedural history

14   and the parties' behavior.  (14-cv-00347-LAB-BGS, ECF No. 101 at 2.)  Judge Burns

15   indicated that "[t]he R&R's factual findings, including its findings concerning the case's

16   procedural history and the parties' behavior, appear to be correct, and the Court ADOPTS

17   them."[4]   (14-cv-00347-LAB-BGS, ECF No. 101 at 2.)  Judge Burns' only reference to

18   Ettore's role in Lee's fraud provides:

19   > This case concerns a fraudulent investment scheme by James Y. Lee, who has
20   > already pled guilty to obstructing justice and securities fraud, and now
21   > incarcerated. It is one of three related cases. In case 14cv1737, *SEC v. Lee*, as
22   > well as in this case, judgment has been entered against Lee. He is facing
23   > default judgment in another related case, 14cv542, *Ayers v. Lee*.   Relief
24   > Defendants have or have had close and ongoing associations with Lee.
25   > According to the complaint, Lee diverted significant assets to them; this action
26   > seeks disgorgement of those assets.

25   (*Id.*)  Judge Burns then granted the SEC's motion for terminating sanctions for the Relief

26   Defendants' conduct described or adopted therein.  (*Id.* at 3–4.)

---

27

28   [4] The R&R did not make any factual findings regarding Ettore's role in the scheme, nor her involvement
therein.  (*See* 14-cv-00347-LAB-BGS, ECF No. 99.)

Nowhere in this Adoption Order did Judge Burns include factual findings that decided the relationship between Ettore and Lee and the shell corporations, and how Lee manipulated the victims and shielded illicit gains from the view of regulators with Ettore's support. (*See* 14-cv-00347-LAB-BGS, ECF No. 101.) Further, the SEC's Motion for Sanctions does not recite any of these Complaint allegations in support of their Motion for Default Judgment. (*See* 14-cv-00347-LAB-BGS, ECF Nos. 46; 90.) The material and critical issues for disgorgement that were necessary, and not presumptive, regarded the amount of money Ettore received from Lee's securities fraud scheme. (*See* 14-cv-00347-LAB-BGS, ECF Nos. 101; 103.) Judge Burns did not make any factual findings as to Ettore's role in Lee's scheme and to what extent, if any, she materially aided him in that scheme. (*Id.*) At most, Judge Burns' final judgment of disgorgement included a finding that Lee perpetuated a fraudulent investment scheme and that Lee diverted significant assets to the Relief Defendants which came from this scheme. (*See id.*) Therefore, the allegations cited by the Plaintiffs from the SEC complaint regarding Ettore acting as Lee's agent, as well as her role in materially aiding his fraudulent scheme, were not a critical or necessary part of the final judgment of disgorgement. (*See* ECF No. 103 at 2–3.)

### D. Court's Broad Discretion

Notwithstanding the above analysis, the Court exercises its broad discretion to not allow the use of offensive collateral estoppel as to the allegations in the SEC complaint regarding Lee's fraudulent scheme or Ettore's role therein.[5] Once an issue is actually and necessarily determined by a court of competent jurisdiction, under the doctrine of collateral estoppel, "that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Montana v. U.S.,* 440 U.S. 147, 153 (1979). Applying *res judicata* and collateral estoppel is "central to the purpose for which

---

[5] Offensive non-mutual collateral estoppel arises when "a plaintiff seeks to estop a defendant from relitigating an issue which the defendant previously litigated and lost against another plaintiff." *Appling v. State Farm Mut. Auto. Ins. Co.*, 340 F.3d 769, 775 (9th Cir. 2003).

civil courts have been established, the conclusive resolution of disputes within their jurisdictions." *Id.* Precluding parties from contesting matters where they already had a "full and fair opportunity to litigate" protects their opposition from the "expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Id.* at 153–54.

As this Court has already found, Ettore did not have a full and fair opportunity to actual litigate the factual allegations cited by the Plaintiffs in the SEC complaint other than the issue of the amount of disgorgement, for which she was sanctioned. Ettore was not accorded a full and fair opportunity to litigate whether Lee was involved in a complex securities fraud, whether she acted as Lee's agent in that fraud, and whether she materially aided him therein. Further, the Plaintiffs were not parties to the SEC action, and have not spent any resources litigating that case. There is no apparent threat of them having to expend resources on multiple lawsuits nor is there any possibility of inconsistent decisions, since the final default judgement in the SEC case dealt solely with the issue of the disgorgement amount due to unjust enrichment. [6] *See Montana*, 440 U.S. at 153–54.

In *Parklane Hosiery Co.*, the Supreme Court outlined some potential hazards that could arise if offensive issue preclusion were applied under inappropriate circumstances. The Court described two basic purposes for issue preclusion: "protecting litigants from the burden of relitigating an identical issue with the same party or his privy and [ ] promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co.*, 439 U.S. at 326. The Court recognized that these purposes might be disserved by the application of offensive issue preclusion in some circumstances. *Id.* at 329–31. The Court cautioned that

---

[6] The Court has found the disgorgement amount received by Ettore to have satisfied all three prongs of the doctrine. However, even though such a finding was necessary to the Court's final judgement in the SEC case (14-cv-00347-LAB-BGS, ECF No. 103), the Plaintiffs have not addressed whether this finding is relevant to issues in the present case. Therefore, this issue is not before the Court and is best suited to be raised in a motion in limine. In any event, were it to be found relevant, the Plaintiffs would not need to expend funds to relitigate this issue, which satisfies the purpose underlying the doctrine of issue preclusion.

use of offensive issue preclusion may be unfair to some defendants. *Id.*

This Court finds that these underlying purposes of offensive issue preclusion are disserved by its application to the present case.  In sum, given the reasons stated above, imposition of the doctrine would be unfair to Ettore.

## IV.    CONCLUSION

Plaintiffs' Motion Regarding the Issue Preclusive Effect of Facts and Conclusions of Law in SEC v. Lee is **GRANTED IN PART** as addressed herein.

**IT IS SO ORDERED**.

Dated:  October 23, 2020

Hon. Bernard G. Skomal
United States Magistrate Judge